UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

YAHEL DIAZ, individually and as Mother and Natural Guardian of A.D.D., an infant,

        Plaintiff,

-against-

UNITED STATES OF AMERICA, by and through its officers, agents and/or employees; and CROUSE HOSPITAL, by and through its officers, agents and/or employees,

        Defendants.

**COMPLAINT**

Case No.: 5:14-CV-1434[MAD/TWD]

---

Plaintiff, YAHEL DIAZ, individually and as Mother and Natural Guardian of A.D.D., an infant, by her attorney, Bottar Leone, PLLC, complaining of the defendants, alleges as follows:

**PARTIES**

1. The plaintiff is a citizen of the State of New York and resides in the County of Onondaga.

2. The infant plaintiff is the biological daughter of Yahel Diaz.

3. At all relevant times, the infant plaintiff has resided with the plaintiff at 815 S. Wilbur Avenue, Syracuse, New York.

4. Upon information and belief, the SYRACUSE COMMUNITY HEALTH CENTER ("SCHC"), is a community health center with a principal place of business located at 819 South Salina Street, Syracuse, NY 13202.

5.      Upon information and belief, and at all times relevant to this complaint, Kenroy Scott, M.D. ("Scott"), was and is a physician duly licensed to practice medicine in the State of New York, with a principal place of business located at 819 South Salina Street, Syracuse, NY 13202.

6.      Upon information and belief, and at all times relevant to this complaint, Brian Thompson, M.D. ("Thompson"), was and is a physician duly licensed to practice medicine in the State of New York, with a principal place of business located at 819 South Salina Street, Syracuse, NY 13202.

7.      Pursuant to the Federally Supported Health Centers Assistance Act, 42 U.S.C. 233, the Secretary of the United States Department of Health and Human Services deemed the SCHC eligible for medical malpractice coverage under the Federal Tort Claims Act.

8.      Upon information and belief, and at all times relevant, Drs. Scott and Thompson were acting pursuant to and in furtherance of their duties as officers, agents and/or employees of SCHC and/or the United States of America.

9.      Upon information and belief, the defendant, UNITED STATES OF AMERICA, is responsible for the acts of omission and/or commission of SCHC officers, agents and/or employees including, but not limited to, Drs. Scott and Thompson.

10.     Upon information and belief, and at all times relevant to this complaint, defendant, CROUSE HOSPITAL ("Crouse"), was a domestic professional corporation duly organized under and existing by virtue of the laws of the State of New York, with a principal place of business and office facility located at 736 Irving Avenue, Syracuse, New York.

11.     Upon information and belief, the defendant, Crouse, is responsible for the acts of omission and/or commission of its officers, agents and/or employees including, but not limited to, medical residents and labor and delivery personnel.

## JURISDICTION

12.     This Court has subject matter jurisdiction pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b) and 28 U.S.C. §1367.

13.     The plaintiff complied with 28 U.S.C. §2675 by presenting an administrative claim to the United States Department of Health and Human Services ("HHS") on February 19, 2014.

14.     Plaintiff's administrative claim was denied by HHS in a letter dated September 16, 2014.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     At or about 8:00 a.m. on February 22, 2012, then 33 year old Yahel Diaz presented to Crouse Hospital for care and treatment in connection with her pregnancy.

16.     At or about 9:15 a.m., Yahel Diaz was examined in obstetrical triage by a Helen Otteno, M.D., a Crouse medical resident, who noted that she 36 weeks 6/7 days gestation and carried a diagnosis of gestational diabetes.

3

17. Dr. Otteno also noted that Yahel Diaz was 3 cm dilated, 50% effaced and -2 station, with ruptured membranes.

18. Following obstetrical triage, Dr. Otteno consulted with Dr. Scott and Yahel Diaz was admitted to Crouse for labor and delivery.

19. Fetal heart tracings between 9:15 a.m. and 10:55 p.m. reveal periods of fetal distress requiring provider intervention.

20. On February 22, 2012, at or about 10:55 p.m., the infant plaintiff was born with APGAR scores of 0 at 1 minute of life, 3 at 5 minutes of life, 4 at 10 minutes of life, and 7 at 15 minutes of life, with a birth weight in excess of 5000 grams.

21. A.D.D.'s birth was complicated by a shoulder dystocia with prolonged lapse of time between delivery of the fetal head and body.

22. Immediately after birth, A.D.D. was resuscitated by positive pressure ventilation, intubation and chest compressions, and was transferred emergently to the NICU where she was placed on mechanical ventilation and received head cooling therapy.

23. A.D.D. remained hospitalized at Crouse Hospital until March 7, 2012.

24. Upon information and belief, and at all times relevant to this complaint and specifically from August 4, 2011 through February 22, 2012, Yahel Diaz was a patient of the SCHC, thereby creating a physician-patient relationship.

4

25. Upon information and belief, and at all times relevant to this complaint, the SCHC held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to Yahel Diaz that its officers, agents and/or employees, including Drs. Thompson and Scott, were knowledgeable, qualified and competent to provide prenatal, antenatal and perinatal care to her and her fetus.

26. Upon information and belief, and at all times relevant to this complaint and specifically on February 22-26, 2012, Yahel Diaz was a patient of Crouse, thereby creating a hospital-patient relationship.

27. Upon information and belief, and at all times relevant to this complaint, Crouse held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to Yahel Diaz that its officers, agents and/or employees, including medical residents and labor and delivery personnel, were knowledgeable, qualified and competent to provide prenatal, antenatal and perinatal care to her and her fetus.

## AS AND FOR PLAINTIFF'S FIRST
## CAUSE OF ACTION

28. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 27 as if set forth in full here.

29. On or about February 22, 2012, the defendants negligently, carelessly and without regard for the plaintiff's health and well-being, treated her in a manner which resulted in severe and permanent bodily injury to the infant plaintiff, including asphyxia at birth, birth depression, hypoxic ischemic encephalopathy, seizure activity, global developmental delay, cervical foraminal dural tear, cervical nerve root avulsion, and right Erb's palsy.

30.     Upon information and belief, the severe and permanent bodily injuries suffered by the infant plaintiff were a direct and proximate result of the carelessness, negligence, and improper care and treatment of the defendants in that they: failed to possess the degree of skill, training and care as was possessed and exercised by the average qualified members of the medical profession within their specialty; failed to keep abreast of relevant literature and appropriate methods of practice; failed to have and/or follow rules, regulations, procedures, or protocols regarding the treatment of patients experiencing non-reassuring and/or ominous fetal heart monitor tracings during labor and delivery; failed to obtain a timely consultation of another physician regarding Yahel Diaz's condition, when they knew or should have known of the foreseeable consequences of their inability or failure to properly and skillfully provide Yahel Diaz with acceptable medical care during the course of her treatment; failed to properly and skillfully provide Yahel Diaz with acceptable medical care and treatment; failed to make a full and complete examination of Yahel Diaz prior to initiating treatment; failed to fully evaluate and adequately treat Yahel Diaz as she then and there presented; failed to adequately monitor the pregnancy/labor/delivery of Yahel Diaz; failed to reasonably and properly supervise medical residents and labor and delivery personnel; failed to have and/or follow rules, regulations, procedures, or protocols regarding the supervision of medical residents and labor and delivery personnel; failed to reasonably and properly utilize and/or order the utilization of a fetal heart monitor and/or scalp electrode; failed to timely evaluate, understand and appreciate fetal heart monitor strips and other signs and symptoms of fetal distress, as occurring on February 22, 2012; failed to appreciate the

signs and symptoms of fetal distress that were occurring on February 22, 2012; failed to adequately evaluate and otherwise take notice of, appreciate, report, or act upon fetal heart monitor strips showing fetal distress with decelerations and minimal and/or absent variability; failed to notice, appreciate, report, or act upon fetal heart monitor strips which were non-reassuring and/or ominous on February 22, 2012; failed to act upon signs, symptoms, and other clinical indications as gave the clinical impression that the infant plaintiff was in or entering into a period of fetal distress; failed to effectuate and/or otherwise see that abdominal delivery was performed in a timely fashion so as to eliminate the risk of fetal distress, hypoxia and brain damage; negligently allowed a vaginal birth despite signs of fetal distress; failed to appreciate and respond to labor and delivery complications; failed to effectuate delivery at such earlier time or times as would have allowed for adequate fetal well-being and would have avoided and/or limited fetal brain and nerve damage; failed to timely instruct the nursing staff to ready a cesarean section room so that a cesarean section could be performed and abdominal delivery be effectuated in order to preserve fetal well-being; failed to timely assimilate the signs, symptoms, conditions and other activities that were present in and about the area of the labor room so as to ensure that a timely cesarean section or abdominal delivery could be performed; failed to adequately and timely perform such delivery at a time prior to the fetus becoming oxygen deprived; failed to adequately and timely perform such delivery at a time prior to the fetus sustaining a cervical nerve injury; failed to timely seek pediatric and/or neonatology assistance in the labor room; failed to ensure, given the nature of the fetal distress that was present on the fetal heart monitor strips, that appropriate agents, officers

7

and/or employees of the hospital would be present so as to adequately care for the child at the time of delivery; failed to ensure that adequate ventilation and trained personnel were present in the delivery room at the time of delivery so as to adequately care for the child upon delivery; failed to appreciate those signs and symptoms as would be indicative of fetal distress and fetal hypoxia thus causing an unreasonable delay in the delivery in this case; failed to follow acceptable standards of care and practice with regard to the labor and delivery of the fetus; failed to perform indicated maneuvers to deliver the fetus without permanent nerve injury; negligent performed maneuvers intended to relieve a shoulder dystocia; failed to be in adequate contact with and have knowledge about the plaintiff's condition during labor and delivery; failed to ensure the reasonable and proper transfer of information from/to physicians team-treating Yahel Diaz; failed to inform and to warn of the risks involved or associated with the condition of the plaintiff; failed to inform and to warn about the treatment of the condition of the plaintiff; failed to timely and properly recognize and respond to the fact that it negligently and improperly diagnosed and/or treated Yahel Diaz; failed to properly and adequately follow-up on Yahel Diaz's care so as to timely recognize and respond to damage caused by its improper diagnosis, treatment and/or clinical course; and were otherwise negligent and committed medical malpractice under the circumstances.

31. Upon information and belief, as a direct and proximate result of the negligence, carelessness and recklessness of the defendants, the infant plaintiff has suffered severe and permanent bodily injury including asphyxia at birth, birth depression, hypoxic ischemic encephalopathy, seizure activity, global developmental delay, cervical foraminal dural tear, cervical nerve root avulsion, and right Erb's palsy.

32. Upon information and belief, as a direct and proximate result of the acts of omission and/or commission of the defendants, Yahel Diaz and A.D.D., have incurred and will incur into the future medical bills, cost of care bills, and rehabilitation bills for care and treatment of A.D.D.

33. Upon information and belief, as a direct and proximate result of the acts of omission and/or commission of the defendants, the infant plaintiff has sustained permanent nerve and brain damage making her dependent upon others for activities of daily living, and which cause her to experience pain, suffering, loss of enjoyment of life, mental anguish and distress, and depression, and which will impair her ability to secure an education and earn wages.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION

34. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 33 as if set forth in full here.

35. Upon information and belief, the defendants failed to obtain the informed consent of Yahel Diaz.

36. Upon information and belief, as a direct and proximate result of the acts of omission and/or commission of the defendants, Yahel Diaz did not give her informed consent with respect to the course of care and treatment provided to her.

37. Upon information and belief, a reasonably prudent person in the position of Yahel Diaz would not have agreed to the treatment provided had she been fully informed, and that the lack of informed consent is a proximate cause of the infant plaintiff's injuries.

38. Upon information and belief, as a direct and proximate result of the negligence, carelessness and recklessness of the defendants, the infant plaintiff has suffered severe and permanent bodily injury including asphyxia at birth, birth depression, hypoxic ischemic encephalopathy, seizure activity, global developmental delay, cervical foraminal dural tear, cervical nerve root avulsion, and right Erb's palsy.

39. Upon information and belief, as a direct and proximate result of the acts of omission and/or commission of the defendants, Yahel Diaz and A.D.D., have incurred and will incur into the future medical bills, cost of care bills, and rehabilitation bills for care and treatment of A.D.D.

40. Upon information and belief, as a direct and proximate result of the acts of omission and/or commission of the defendants, the infant plaintiff has sustained permanent nerve and brain damage making her dependent upon others for activities of daily living, and which cause her to experience pain, suffering, loss of enjoyment of life, mental anguish and distress, and depression, and which will impair her ability to secure an education and earn wages.

**WHEREFORE**, the plaintiff hereby demands a jury trial of all issues so triable, together with judgment against the defendant, as follows:

(a) Awarding her compensatory damages in the amount of $25,000,000.00;

(b) Awarding her costs and disbursements of this action; and

(c) Awarding her such other and further relief as the Court deems just and proper.

Dated: November 25, 2014

BOTTAR LEONE, PLLC

_____
Michael A. Bottar, Esq. (Roll: 512620)
*Attorney for Plaintiff*
AXA Tower II – Suite 1600
120 Madison Street
Syracuse, NY 13202
Tel: (315) 422-3466
mbottar@bottarleone.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

YAHEL DIAZ, individually and as Mother and Natural Guardian of A.D.D., an infant,

        Plaintiff,

-against-

UNITED STATES OF AMERICA, by and through its officers, agents and/or employees; and CROUSE HOSPITAL, by and through its officers, agents and/or employees,

        Defendants.

**CERTIFICATE OF MERIT PURSUANT TO CPLR 3012-A**

Case No.:

---

STATE OF NEW YORK    )
COUNTY OF ONONDAGA  ) SS.:

    I, MICHAEL A. BOTTAR, being duly sworn, depose and say:

    I am an attorney duly licensed to practice law in the State of New York and am the attorney for the Plaintiff in this action. I have reviewed the facts of the case and have consulted with at least one physician licensed to practice medicine, and who I reasonably believe is knowledgeable in the relevant issues involved in this action. I have concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

                                                *[signature]*
                                                Michael A. Bottar, Esq.